SLIP OP. 05-164

UNITED STATES COURT OF INTERNATIONAL TRADE

| |
|---|
| MUKAND INTERNATIONAL, LTD., |
| Plaintiff, |
| v. |
| UNITED STATES OF AMERICA, |
| Defendant. |

Before: JANE A. RESTANI, Chief Judge

Court No. 05-00034

## OPINION

[Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction is Granted.]

Dated: December 22, 2005

Miller & Chevalier (Peter J. Koenig) for the plaintiff.

Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Jeanne E. Davidson, Deputy Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, (Stephen C. Tosini), Matthew D. Walden, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of counsel, for the defendant.

Restani, Chief Judge: Mukand International, Ltd. ("Mukand") brings this action to request a writ of mandamus to compel the Bureau of Customs and Border Protection ("Customs") to refund all antidumping duties collected on Mukand's entries of stainless steel bar ("SSB") produced in the United Arab Emirates ("UAE") using stainless steel wire rod ("SSWR") from India. Mukand asserts that the improperly liquidated entries were entered into the United States between June 5, 2000, and January 8, 2002. Defendant seeks to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(5).

**BACKGROUND**

On February 21, 1995, the Department of Commerce ("Commerce") issued an antidumping order upon SSB from India. Antidumping Duty Orders: Stainless Steel Bar from Brazil, India and Japan, 60 Fed. Reg. 9661 (Dep't Commerce Feb. 21, 1995) [hereinafter SSB Order]. In the SSB Order, Commerce imposed an antidumping duty rate of 21.02% on Mukand's entries of SSB from India using adverse facts available. Id. Beginning in June of 2000, Mukand began importing SSB produced in the UAE using SSWR from India. On March 22, 2005, Commerce clarified that entries of SSB produced in the UAE using SSWR from India are not subject to the SSB Order, but not before Customs liquidated Mukand's entries of SSB from UAE during the period of review from February 1, 2000 through January 31, 2001 ("POR 2000-2001") and the period of review from February 1, 2001 through January 31, 2002 ("POR 2001-2002").

On February 14, 2001, Commerce notified interested parties of the opportunity to request an administrative review of the SSB Order for the POR 2000-2001. Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Admin. Review, 66 Fed. Reg. 10,269 (Dep't Commerce Feb. 14, 2001). On March 22, 2001, Commerce initiated an antidumping duty administrative review, but no interested party requested a review related to Mukand's imports of SSB. Initiation of Antidumping & Countervailing Duty Admin. Reviews & Requests for Revocations in Part, 66 Fed. Reg. 16,037 (Dep't Commerce Mar. 22, 2001). Accordingly, on May 18, 2002, Commerce issued instructions to Customs to liquidate Mukand's entries of SSB for the POR 2000-2001.[1] Def's Mot. to Dismiss 3. On July 11, 2002,

---

[1]Mukand asserts that Customs liquidated the entries of Mukand SSB from UAE for the POR 2000-2001 on February 27, 2004. Complaint 7.

Commerce published the final results of its administrative review on SSB from India for the POR 2000-2001. Stainless Steel Bar from India; Final Results of Antidumping Admin. Review, 67 Fed. Reg. 45,956 (Dep't Commerce July 11, 2002) [hereinafter 2000–2001 Admin. Review Final Results].

On February 1, 2002, Commerce notified interested parties of the opportunity to request an administrative review of the SSB Order for the POR 2001-2002. Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Admin. Review, 67 Fed. Reg. 4945 (Dep't Commerce Feb. 1, 2002). On March 7, 2002, Commerce initiated an antidumping duty administrative review at the request of interested parties, including Mukand. Preliminary Results of Antidumping Duty Admin. Review & Partial Rescission of Admin. Review, 67 Fed. Reg. 10,377 (Dep't Commerce Mar. 7, 2002). Commerce issued antidumping duty questionnaires to the interested parties on May 22, 2002, but Mukand submitted an untimely response, and Commerce refused to consider it.[2]

On September 10, 2002, Mukand submitted a scope ruling request to Commerce seeking clarification as to whether its entries of SSB produced in the UAE using SSWR from India were subject to the SSB Order. On October 28, 2002, Commerce acknowledged receipt of the scope ruling request, but determined that the request was incomplete and required Mukand to

---

[2]On May 22, 2002, Commerce issued an antidumping duty questionnaire to Mukand with a response deadline of June 28, 2002. Without requesting an extension, Mukand responded on August 2, 2002, stating that it made no SSB shipments to the United States during the POR. Commerce determined that it would not consider Mukand's late response. It noted, however, that shipment data furnished by Customs indicated that Mukand made SSB shipments to the United States during the POR.

provide additional information.[3]  Following subsequent Mukand submissions and Commerce

rejections, Mukand filed its fourth and final scope ruling request on May 14, 2003, which

Commerce accepted as a completed request.[4]

Simultaneously, Commerce conducted its administrative review for the POR

2001-2002.  On March, 7, 2003, Commerce imposed a preliminary antidumping duty rate of

21.02% on Mukand's entries of SSB for the POR 2001-2002, using adverse facts available.

Notice of Preliminary Results of Antidumping Duty Admin. Review: Stainless Steel Bar from

India, 68 Fed. Reg. 11,058 (Dep't Commerce March 7, 2003).  Mukand submitted a brief and

rebuttal challenging Commerce's determination on the ground that data from Customs only

pertained to SSB from the UAE produced by Mukand's affiliate, United Bright Steels, Ltd., not

SSB produced by Mukand in India.  On August 11, 2003, Commerce published the final results

of its administrative review on SSB from India for the POR 2001-2002.  Stainless Steel Bar from

India; Final Results of Antidumping Admin. Review, 68 Fed. Reg. 47,543 (Dep't Commerce

Aug. 11, 2003) [hereinafter 2001–2002 Admin. Review Final Results].  Commerce affirmed its

use of the adverse facts available rate for Mukand based on its untimely response and did not

---

[3]In its response to Mukand, Commerce stated that it was uncertain as to whether Mukand
was requesting a scope ruling with respect to the SSB Order or with respect to the antidumping
order upon SSWR from India. See Antidumping Duty Order: Certain Stainless Steel Wire Rods
from India, 58 Fed. Reg. 63,335 (Dep't Commerce Dec. 1, 1993) [hereinafter SSWR Order].
Mukand submitted additional scope ruling requests on November 25, 2002, and April 30, 2003.
By letters dated January 10, 2003, and May 14, 2003, Commerce rejected each request on the
ground that the requests were incomplete.

[4]Following Mukand's May 14, 2003 submission, Commerce did not respond with a
request for additional information.  In its motion to dismiss, the government concedes that
Commerce accepted this request as a completed request for a scope ruling.  See Def's Mot. to
Dismiss 2.

address Mukand's scope argument.  Id.  On October 17, 2003, Commerce directed Customs to lift suspension and liquidate these entries.  On November 14, 2003, Customs liquidated Mukand's entries of SSB.  Mukand filed protests against Customs' liquidation of the entries, and Customs denied the protests.

On January 19, 2005, Mukand filed a complaint against Commerce seeking a writ of mandamus to compel Commerce to issue a scope determination, suspend any further liquidation, and refund all antidumping duties on Mukand's imports of SSB from UAE.  Mukand also supplemented its outstanding application for a scope ruling by letter dated February 22, 2005.  On March 25, 2005, Commerce formally initiated a scope inquiry and issued a preliminary scope ruling determining that Mukand's entries of SSB from UAE were outside the scope of the antidumping order.  Initiation of Scope Inquiry & Preliminary Scope Ruling Memorandum (Dep't Commerce Mar. 25, 2005).  On May 23, 2005, Commerce issued a final scope ruling determining that SSB produced in the UAE using SSWR from India is not subject to the SSB Order.  Final Scope Ruling, Antidumping Duty Orders on Stainless Steel Bar from India & Stainless Steel Wire Rod from India, (Dep't Commerce May 23, 2005) [hereinafter Final Scope Ruling].

**DISCUSSION**

At present, Mukand seeks a refund of antidumping duties paid on imports of SSB from UAE that Commerce determined to be outside the scope of the SSB Order.[5]  Mukand's

---

[5]The parties agree that Mukand's request for a writ of mandamus to compel Commerce to issue a scope determination and to suspend liquidation of Mukand's entries of SSB from UAE was mooted by the Final Scope Ruling.

complaint asserts that Commerce failed to follow its scope determination procedures, which caused the improper liquidation of Mukand's entries. Mukand argues that Commerce accepted its request for a scope ruling on May 13, 2003, after which it was required, "[w]ithin 45 days of the date of receipt of an application for a scope ruling," to issue a final ruling or initiate a scope inquiry. 19 C.F.R. § 351.225(c)(2). If Commerce had initiated an inquiry, Mukand argues that it would have been required to instruct Customs to continue the then ongoing suspension of liquidation for its entries pending a scope ruling. See 19 C.F.R § 351.225(l)(1) (When Commerce "conducts a scope inquiry . . . and the product in question is already subject to suspension of liquidation, that suspension of liquidation will be continued, pending a preliminary or a final scope ruling."). Commerce did not, however, formally initiate a scope inquiry until March 25, 2005.[6] Mukand argues that Commerce erred by failing to initiate the scope inquiry within 45 days, and erred by failing to continue suspension of liquidation of Mukand's entries.

As an initial matter, the Court considers whether it has subject matter jurisdiction to review this case. Mukand asserts that jurisdiction to seek reliquidation is appropriate under 28 U.S.C. § 1581(i) (2000). The government contends that § 1581(i) jurisdiction is inappropriate because Mukand could have brought this action under 28 U.S.C. § 1581(a). Moreover, the government argues that this court lacks jurisdiction because the liquidation of Mukand's entries is final under 19 U.S.C. § 1514(a) (2000).

_____

[6]The parties appear to agree that Commerce failed to timely respond to Mukand's request. The government concedes that in its May 14, 2003 submission, "Mukand requested that Commerce find that the stainless steel bar that Mukand produces in the United Arab Emirates . . . out of stainless steel wire rod from India is not within the scope of the order upon stainless steel bar from India," yet it does not explain why Commerce did not initiate a scope inquiry until March 25, 2005. Def's Mot. to Dismiss 2, 12.

## I.      Mukand could not have initiated this action under 28 U.S.C. § 1581(a).

Under § 1581(a), the Court of International Trade has "exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930 [19 U.S.C. § 1515]."  28 U.S.C. § 1581(a).  A civil action under § 1515 may commence after a party protests a Customs liquidation decision, and receives an allowance or denial of the protest pursuant to 19 U.S.C. § 1514.  At the time of Customs' liquidation decision, the following decisions were subject to protest:

> (1) the appraised value of merchandise;
> (2) the classification and rate and amount of duties chargeable;
> (3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;
> (4) the exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws, except a determination appealable under section 1337 of this title;
> (5) the liquidation or reliquidation of an entry, or reconciliation as to the issues contained therein, or any modification thereof,
> (6) the refusal to pay a claim for drawback; or
> (7) the refusal to reliquidate an entry under subsection (d) of section 1520 of this title;

19 U.S.C. § 1514(a).  A protestable Customs decision is subject to § 1581(a) jurisdiction and is otherwise "final and conclusive upon all persons."  Id.  Here, the government contends that Mukand could have protested this action under 19 U.S.C. § 1514(a)(5), so subject matter jurisdiction is unavailable under 28 U.S.C. § 1581(i).

Subsection 1581(i) is a residual jurisdiction provision, which provides in relevant part,

> the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for --
> . . . (4) administration and enforcement with respect to the matters referred to in . . . subsections (a)–(h) of this section.

28 U.S.C. § 1581(i)(4). Litigants may not invoke jurisdiction under § 1581(i) "when jurisdiction

under another subsection of § 1581 is or could have been available, unless the remedy provided

under that other subsection would be manifestly inadequate." Miller & Co. v. United States, 824

F.2d 961, 963 (Fed. Cir. 1987).

        In the instant case, Mukand's challenge to Commerce's compliance with its

regulatory procedures for reviewing scope determinations is not an action available to Mukand

under § 1581(a). "Section 1514(a) does not embrace decisions by other agencies [besides

Cutsoms]."[7] Mitsubishi, 44 F.3d at 976. Commerce is charged with handling antidumping

determinations, including scope determinations, and challenges to those determinations are

brought under 28 U.S.C. § 1581(c).[8] Commerce is also charged with administering the final

results of antidumping determinations, including following its detailed procedures for scope

---

[7]In adopting the Trade Agreements Act of 1979 ("1979 Act"), Congress intended "to
distinguish between claims that were subject to protest under 19 U.S.C. § 1514 and judicial
review under 28 U.S.C. § 1581(a) on the one hand and claims that were subject to § 751
administrative reviews and/or judicial review under 19 U.S.C. § 1516a and 28 U.S.C. § 1581(c)
on the other." Mitsubishi Elecs. Am., Inc. v. United States, 18 CIT 167, 173, 848 F. Supp. 193,
198 (1994); see also H.R. Rep. No. 96-1235, at 44 (1980) (stating that § 1581(a) should not be
used to circumvent the exclusive method of judicial review of an antidumping determination
listed in section 516A of the Tariff Act of 1930 (19 U.S.C. § 1516a)). Specifically, the 1979 Act
amended 19 U.S.C. § 1514(a) and (b) to exclude antidumping determinations from the list of
matters that parties may protest to Customs. Mitsubishi Elecs. Am. Inc. v. United States, 44 F.3d
973, 976 (Fed. Cir. 1994).

[8]It is also clear that jurisdiction was not available under 28 U.S.C. § 1581(c). Section
1581(c) provides the Court of International Trade with "exclusive jurisdiction of any civil action
commenced under Section 516A of the Tariff Act [codified as 19 U.S.C. § 1516a]." Section
516A provides that an interested party may commence an action to challenge an administrative
determination described in 19 U.S.C. § 1516a(a)(2)(B), which does not provide an avenue to
challenge Commerce's failure to comply with the scope ruling requirements of 19 C.F.R. §
351.225.

ruling requests under 19 C.F.R. § 351.225.  Challenges relating to its administration of the final

results of antidumping duty determinations may be brought under 28 U.S.C. § 1581(i).  See

Consol. Bearings Co. v. United States, 348 F.3d 997, 1002 (Fed. Cir. 2003) ("[A]n action

challenging Commerce's liquidation instructions is not a challenge to the final results, but a

challenge to the 'administration and enforcement' of those final results.").

          Once Commerce instructs Customs to liquidate entries, "Customs merely follows

Commerce's instructions in assessing and collecting duties."  Mitsubishi, 44 F.3d at 977.

Customs cannot "modify Commerce's determinations, their underlying facts, or their

enforcement."  Id. (quoting Royal Bus. Machs, Inc. v. United States, 1 CIT 80, 87, 507 F. Supp.

1007, 1014 n.18 (Ct. Int'l Trade 1980)).  Customs plays a "merely ministerial role in liquidating

antidumping duties."  Mitsubishi, 44 F.3d at 977.

          Here, the government does not allege, and the record does not reflect, that

Commerce's instructions provided Customs with any discretion to exceed its ministerial role.

Moreover, the government does not allege that Customs erred in its interpretation of the scope of

the SSB Order.  Cf. Xerox Corp. v. United States, 289 F.3d 792, 795 (Fed. Cir. 2002) ("[W]here

the scope of the antidumping duty order is unambiguous and undisputed, and the goods clearly

do not fall within the scope of the order, misapplication of the order by Customs is properly the

subject of a protest under 19 U.S.C. § 1514(a)(2).").  Therefore, Customs' implementing decision

was not a protestable decision within the meaning of § 1514, and Mukand could not have

initiated a 28 U.S.C. § 1581(a) action.

          Accordingly, the court does not lack subject matter jurisdiction to consider

Mukand's request for a writ of mandamus under 28 U.S.C. § 1581(i) based on the availability of an action pursuant to 28 U.S.C. § 1581(a).

**II.     The court is precluded from reviewing this case by Mukand's failure to protect its entries from liquidation.**

The Federal Circuit has held that a preliminary injunction is appropriate to prevent liquidation of entries because "[o]nce liquidation occurs, a subsequent decision by the trial court on the merits . . . can have no effect." Zenith Radio Corp. v. United States, 710 F.2d 806, 810 (Fed. Cir. 1983). Here, Mukand brings a 28 U.S.C. § 1581(i) action to obtain a refund of antidumping duties it paid on imports of SSB from UAE that Commerce determined post-liquidation to be outside the scope of the SSB Order. The Court concludes that Mukand's failure to seek injunctive relief prior to the liquidation of its entries of SSB from UAE precludes the Court from exercising subject matter jurisdiction to consider its refund request. See Mitsubishi, 18 CIT at 180, 848 F. Supp. at 203 (holding that "failure to seek injunctive relief against liquidation before commencing [an] action . . . precludes [the] Court from exercising jurisdiction under 28 U.S.C. § 1581(I)"), aff'd on alternative grounds, 44 F.3d 973, 977; see also SKF USA Inc. v. United States, 316 F. Supp. 2d 1322, 1327 (Ct. Int'l Trade 2004) ("After an antidumping review determination, if a party's entries are liquidated prior to judicial review of the determination and antidumping duties are assessed, any outstanding challenges as to those entries are rendered moot because liquidation, absent errors by Commerce or Customs, places the entries outside the jurisdiction of the court.").

In the instant case, Mukand did not seek an administrative review for the POR 2000-2001, and while Mukand requested an administrative review for the POR 2001-2002, it

failed to submit a timely administrative review questionnaire response as required for participation.[9] The administrative review for the POR 2001-2002 proceeded without Mukand's participation, and instead Mukand followed the procedure for submitting a scope ruling request to Commerce pursuant to 19 C.F.R. § 351.225. Commerce accepted Mukand's scope ruling request on May 14, 2003, but did not initiate a scope inquiry until March 25, 2005. Mukand argues that Commerce was required to either initiate a scope inquiry or issue a scope determination within 45 days of its scope ruling request. 19 C.F.R. § 351.225(c)(2). Moreover, Mukand asserts that if Commerce had initiated a scope inquiry, it was required to suspend liquidation of entries pending a scope ruling. 19 C.F.R § 351.225(l)(1).

On August 11, 2003, Commerce published the 2001-2002 Admin. Review Final Results, rejecting Mukand's argument that Commerce was required to consider Mukand's untimely questionnaire submission before assigning an antidumping duty rate. Commerce assigned a total adverse facts available rate of 21.02% to Mukand's entries, and provided Mukand with notice that it would instruct Customs to liquidate entries and assess duties at the assigned rate. 2001–2002 Admin. Review Final Results, 68 Fed. Reg. at 47,545. Although Mukand received notice that Customs would liquidate its entries at the total adverse facts available rate, Mukand did not take any steps to prevent the liquidation, which occurred on November 14, 2003. Instead, Mukand waited for Customs to liquidate its entries, then filed a protest with Customs, which was denied.

---

[9]When Mukand submitted an answer, it was two months late and it did not specifically assert that Mukand's entries of SSB were outside the scope of the SSB Order.

The Court finds that Mukand should not have waited until Customs denied its protest to file a § 1581(i) action.  Mukand should have filed a § 1581(i) action with this Court as soon as it received notice of the potential liquidation of its entries and obtained injunctive relief against liquidation before Customs liquidated its entries.  See Mitsubishi, 18 CIT at 180, 848 F. Supp. at 203 (injunctive relief pursuant to 28 U.S.C. § 1581(i) is appropriate where Commerce failed to begin an administrative review as required by 19 C.F.R. § 353.53a(d)(1)); Interredec, Inc. v. United States., 11 CIT 45, 46 n.1, 652 F. Supp. 1550, 1553 n.1 (1987) (injunctive relief pursuant to 28 U.S.C. § 1581(i) is appropriate to contest Commerce's refusal to conduct a § 751 review).

Mukand argues that it has a right to reliquidation under the Federal Circuit's decision in Shinyei Corp. of Am. v. United States, 355 F.3d 1297 (Fed. Cir. 2004).  In Shinyei, the plaintiff alleged that Commerce erroneously instructed Customs to liquidate entries contrary to Commerce's amended final results.  Prior to liquidation, the plaintiff brought an action seeking a writ of mandamus to obtain immediate liquidation in accordance with the amended final results.  While the action was pending, Customs liquidated the plaintiff's entries, and the plaintiff amended its action to seek reliquidation of its entries.

The court held that the Court of International Trade is not divested of § 1581(i) subject matter jurisdiction merely by the liquidation of the plaintiff's entries.  Shinyei, 355 F.3d at 1310.  The court distinguished the case from Mitsubishi on its facts, as a case where the plaintiff did not  sleep on its rights:

> In the present case, Shinyei cannot be described as a party that has slept on its
> rights. Rather, Shinyei filed suit in the Court of International Trade seeking a writ
> of mandamus ordering liquidation of its entries at the rate it thought it was entitled

to--the lower rate set forth in the Amended Review Results. When its entries were liquidated "as entered" pursuant to Commerce's clean up instruction, Shinyei amended its complaint and alleged that Commerce had failed to comply with section 1675(a)(2)(B).

Id. at 1309–10. The court also noted that the plaintiff had already obtained an injunction against liquidation of entries during litigation of a challenge to the final results of an administrative review.[10]

Thus, while the court declined to extend the Federal Circuit's holding in Zenith to actions brought post-liquidation under § 1581(i), Shinyei, 355 F.3d at 1309, it recognized the strong presumption against reliquidation of entries where the plaintiff does not pursue all available avenues to prevent the unnecessary liquidation of entries by Customs. The court finds Shinyei's distinction relevant here, and declines to extend the court's holding to the facts of this case, where the Court finds that the plaintiff slept on its rights, then protested Customs' liquidation of its entries, before bringing a § 1581(i) action.

The court relies, in part, on the Federal Circuit's recognition in Sandvik of the twin purposes of administrative exhaustion, i.e., protecting administrative agency authority and promoting judicial efficiency. Sandvik Steel Co. v. United States, 164 F.3d 596, 600 (Fed. Cir. 1998). In Sandvik, the court held that under the doctrine of administrative exhaustion the plaintiff was not entitled to judicial relief for the liquidation of entries purported to be outside the scope of an antidumping order because the plaintiff failed to seek a scope ruling request pursuant to 19 C.F.R. § 351.225. Here, Mukand filed an application for a scope ruling request, but failed

---

[10]It is not clear from the decision in Shinyei how broad the injunction was and whether or not the injunction permanently enjoined any liquidation not in accordance with the final court decision.

to seek an injunction pending a Commerce scope ruling, even after it become clear that its entries

would be liquidated before Commerce responded.[11]

        As in Sandvik, the purpose of protecting administrative agency authority is

particularly applicable to this case because the "[s]ound administration of the antidumping laws

counsels that Commerce, which administers those laws, should in the first instance decide

whether an antidumping order covers particular products." Sandvik, 164 F.3d at 600. Here,

instead of diligently pursuing a Commerce scope determination, Mukand raised its scope issue

with Customs in its liquidation protest. Moreover, the purpose of judicial efficiency is especially

appropriate here because Commerce subsequently decided that Mukand's imports of SSB from

UAE were not covered by the SSB Order, so pursuing pre-liquidation remedies would have

saved the resources expended by Customs in implementing the antidumping duty order,

reviewing the protest, and by this Court in the present litigation. See id. (stating that had the

---

[11]While the Court rests its decision on Mukand's failure to diligently pursue its injunctive remedies, the Court also recognizes that Mukand did not pursue all of the administrative remedies available to it. Here, Mukand did not seek an administrative review for the POR 2000-2001, and it was assigned an adverse facts available rate for the POR 2001-2002 because it filed an untimely questionnaire response.

Mukand addressed this point, arguing that seeking a scope determination through the administrative review process would have been futile because Commerce provided 19 C.F.R. § 351.225 as an exclusive administrative procedure for requesting scope rulings. While the Court agrees that the regulation provides a detailed process for filing scope ruling requests, the Court also recognizes that it has long approved the use of the administrative review process as an avenue for challenging the scope of antidumping duty orders. See Kyowa Gas Chem. Indus. Co. v. United States, 7 CIT. 138, 140, 582 F. Supp. 887, 889 (1984) ("It is undisputed that in a § 1675(a) review proceeding the ITA may clarify the scope of a prior dumping finding.").

Here, Commerce did not object to Mukand's pursuit of the scope ruling request route after it failed to pursue the administrative review process. Apparently, both avenues are available, but only the administrative review route will secure an automatic suspension of liquidation.

importers filed for scope determinations, Commerce may have decided the imports were not covered by the order, thus preventing litigation).

Accordingly, the Court concludes that Mukand's failure to seek injunctive relief before Customs liquidated its entries precludes the Court from exercising § 1581(i) subject matter jurisdiction over its request for reliquidation.

## CONCLUSION

In light of the foregoing, the court finds that Mukand's request for reliquidation of entries is barred by its failure to pursue injunctive relief prior to liquidation of its entries. Accordingly, defendant's motion for summary judgment is granted.

        /s/ Jane A. Restani
Jane A. Restani
CHIEF JUDGE

Dated:  New York, New York

This 22nd day of December, 2005.