Slip Op. 12 - 154

# *UNITED STATES COURT OF INTERNATIONAL TRADE*

——————————————————————
:
AMS ASSOCIATES, INC., d/b/a            :
SHAPIRO PACKAGING,                     :
:
                        Plaintiff,     :
:
            v.                         :       Before: R. Kenton Musgrave, Senior Judge
:       Court No. 11-00148
UNITED STATES,                         :
:
                        Defendant,     :
:
            and                        :
:
LAMINATED WOVEN SACKS                  :
COMMITTEE, COATING EXCELLENCE          :
INTERNATIONAL, LLC, and POLYTEX        :
FIBERS CORPORATION,                    :
:
            Defendant-Intervenors.     :
——————————————————————
:

**OPINION**

[Holding *ultra vires* the suspension of liquidation of entries of laminated woven sacks from the People's Republic of China.]

Dated: December 18, 2012

*Lizbeth R. Levinson* and *Roland M. Wilsa*, Kutak Rock LLP, Washington, DC, for plaintiff.

*Tara K. Hogan*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for defendant. With her on the brief were *Stuart F. Delery*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Reginald T. Blades, Jr*., Assistant Director. Of counsel on the brief was *Rebecca Cantu*, Attorney, Office of Chief Counsel for Import Administration, U.S. Department of Commerce.

*Joseph W. Dorn* and *Jeffrey B. Denning*, of *King & Spalding*, Washington, DC, for defendant-intervenors.

Musgrave, Senior Judge:  This case involves similar issues to those argued before this court in *AMS Associates, Inc. v. United States*, Ct. No. 11-00101 ("*AMS I*"), see Slip Op. 12-98, dated July 27, 2012, familiarity with which is presumed.  Although that case was not decided on the merits of the issues present herein because the affected entries had all liquidated before the action became ripe, thus removing any harm alleged by plaintiff, the underlying issues are familiar to the court.

During the first administrative review of the relevant antidumping duty order, the U.S. Department of Commerce, International Trade Administration ("Commerce") performed a scope inquiry and issued instructions retroactively suspending liquidation of the Plaintiff's entries made during the second administrative review period involved in the present action.  For the reasons explained below, the court finds the suspension instructions *ultra vires* and remands the case to Commerce for actions consistent with this opinion.

### *I. Facts*

Commerce found that laminated woven sacks from the People's Republic of China ("PRC") were being dumped in *Laminated Woven Sacks from the People's Republic of China*. 73 Fed. Reg. 45,941 (Aug. 7, 2008) ("LWS Order").  The scope of the LWS Order was defined in part as "bags or sacks consisting of one or more plies of fabric consisting of woven polypropylene strip and/or polyethylene" that are "laminated to an exterior ply of plastic film or to an exterior ply of paper that is suitable for high quality print graphics." LWS Order, 73 Fed. Reg. at 45,942.

In September, 2009, Commerce undertook the first administrative review of the LWS Order for the period January 31, 2008 through July 31, 2009 ("AR1"). During that review Commerce investigated how respondent Zibo Aifudi Plastic Packaging Co., Ltd. ("Aifudi") determined whether merchandise was subject to the LWS Order due to concerns that not all of Aifudi's production of LWS was included in the information provided to Commerce.[1] At issue were sacks made in the PRC by Aifudi from fabric that originated elsewhere. Aifudi argued to Commerce that a country-of-origin ruling from U.S. Customs and Border Protection ("CBP") provided an adequate basis for its decision not to include sacks made with non-PRC-origin fabric in its sales information. *See* HQ N08508 (May 27, 2008), Exhibit A to Plaintiff's Memorandum in Support of its 56.2 Motion for Judgment on the Agency Record ("Pl's Memo"). Pursuant to that ruling, Aifudi declared a non-PRC origin for LWS made with non-PRC origin fabric and as a result paid no cash antidumping deposits upon their entry.

In AR1, Commerce concluded pursuant to a substantial transformation analysis that the PRC was the country of origin of the Aifudi LWS.

> We recommend preliminarily finding the country-of-origin of LWS produced in the PRC from imported fabric is of PRC origin. As a result, we also recommend preliminarily finding that the LWS imported by Aifudi into the U.S. are within the scope of the order. Based on these findings, we recommend that Aifudi be required to provide its U.S. sales of LWS produced from third countries['] woven fabric.

---

[1] *See*, *e.g.*, *Preliminary Decision Regarding the Country of Origin of Laminated Woven Sacks Exported by [Aifudi]*, (May 25, 2010) at 2 (citing additional information requested from Aifudi in January, 2010) ("*Preliminary Decision*"), Exhibit B to Pl's Memo, and Nov. 12, 2010 Memo to File from Catherine Bertrand (Commerce), attached at Tab 4 (P.R. 10) to Appendix to Laminated Woven Sacks Committee's ("LWSC") Response to Shapiro's Rule 56.2 Memo in Support of its Motion for Judgment on the Agency Record ("LWSC Appx.").

*Preliminary Decision* at 9.   Based upon this finding, Commerce issued a "clarification" of its liquidation instructions to CBP.  Commerce Message No. 0204301 to CBP (July 23, 2010) ("Clarification"), Exhibit C to Pl's Memo.  Commerce instructed CBP to "continue to suspend liquidation of all LWS from the PRC, regardless of the origin of the woven fabric, that is entered, or withdrawn from warehouse, for consumption, on or after January 31, 2008."  Clarification at 2.   While the text of the Clarification innocuously uses present tense, the effect of the Clarification was to retroactively suspend liquidation of and collect cash deposits of antidumping duties on all entries of Aifudi sacks made with non-PRC origin fabric after January 31, 2008, covering almost all of the affected entries made during the second review period, which ended July 31, 2010.[2]

In March, 2011, Commerce issued the final results of the first LWS administrative review.[3]  It determined that it had correctly determined the country of origin issue during the administrative review, and that the Clarification was in accordance with the regulatory scheme. Commerce incorporated the findings of the Preliminary Decision on country of origin into the *AR1 Results*.

Aifudi refused to participate in the second administrative review.  *Laminated Woven Sacks from the People's Republic of China: Preliminary Results of the Second Administrative Review*, 75 Fed. Reg. 81,218 (Dec. 27, 2010) ("*AR2 Preliminary Results*").

---

[2] Pl's Memo at 5.  At the court's request, the parties have identified entries of LWS made with non-PRC origin fabric filed during the second review period whose liquidation remains suspended.  *See* Joint Response to Court's September 13, 2012 Order, dated October 12, 2012.

[3] *Laminated Woven Sacks from China: Final Results of First Antidumping Duty Administrative Review*, 76 Fed. Reg. 14,906 (Mar. 18, 2011) ("*AR1 Results*").

Commerce preliminarily determined that Aifudi had not demonstrated its eligibility for separate-rate status for the administrative review and failed to rebut the presumption of PRC government control. *AR2 Preliminary Results*, 75 Fed. Reg. at 81,219. Due to Aifudi's lack of cooperation, Commerce applied adverse facts available and assigned the PRC-wide entity the rate of 91.73%. *AR2 Preliminary Results*, 75 Fed. Reg. at 81,219-20. These conclusions carried over to the final results of the second review. *Laminated Woven Sacks from the People's Republic of China: Final Results of the Second Administrative Review*, 76 Fed. Reg. 21,333, 21,334 (Apr. 15, 2011) ("*AR2 Final Results*").

AMS Associates, Inc., d/b/a Shapiro Packaging ("Shapiro"), Plaintiff in this action, entered an appearance in the second review and filed briefs before Commerce. *See* P.D. 16 & 17, Tabs G & H to Defendant's Appendix ("Def's Appx."). Shapiro contended before Commerce that the country of origin determination in the first review period was procedurally erroneous and that Commerce issued the suspension of liquidation instructions to CBP without statutory or regulatory basis. P.D. 16.

In the *AR2 Final Results*, Commerce concluded that it would continue to follow the decision made during the first administrative review regarding the country of origin of LWS made with non-PRC-origin fabric. Issues and Decision Memorandum for the Second AR Results, April 8, 2011 ("AR2 I&D Memo"), at 2-3, Tab 7 to Plaintiff's Appendix of Record Documents ("Pl's Appx."). Commerce defended its decision to retroactively suspend liquidation of the entries of Aifudi LWS made with non-PRC-origin fabric.

> Early in the first administrative review proceeding, it was apparent that the Department needed to address a scope issue to determine the country of origin of [LWS] produced in the PRC from imported woven fabric and sold to the United

States by the respondent during the POR. Such an examination is akin to that made in a separate scope inquiry, which provides a mechanism for interested parties to obtain a scope decision, without having to seek an administrative review. Both proceedings provide interested parties notice and an opportunity to comment. The Department's regulations governing an administrative review, however, do not specifically address the suspension of liquidation with respect to a product whose status is subject to a scope inquiry conducted in the context of an administrative review proceeding. Accordingly, when the Department makes a scope decision within the context of the review, the regulations governing scope inquiries provide relevant guidance. *See* 19 C.F.R. § 351.225. These regulations provide that the Department may order the suspension of liquidation of a product found to be included within the scope of an order to continue or to commence, as the case may be, following a preliminary scope determination. *See* 19 C.F.R. § 351.225(*l*)(2). The provision for suspension of liquidation is to preserve the ability to assess appropriate duties on the subject merchandise in the future. Therefore, consistent with the regulations governing scope inquiries, when making a scope decision in the context of an administrative review, the Department has the authority to issue instructions to CBP regarding the suspension of entries, as appropriate, after issuing a preliminary country of origin or scope decision conducted within that segment.

The Department notes that in order to prevent subject merchandise from being liquidated without regard to antidumping or countervailing duties and in order to ensure the collection of appropriate cash deposits on [LWS] manufactured in the PRC, the Department issued an instruction to CBP to resolve the confusion that might arise from differences between the Department and CBP's respective country-of-origin classifications. Although no additional suspension of liquidation would normally be needed, as explained in 19 C.F.R. § 351.225(*l*), in this instance the Department issued an instruction to prevent liquidation of merchandise properly subject to the order and to implement the findings in its preliminary country of origin memorandum.

AR2 I&D Memo at 4-5, Tab 7 to Pl's Appx.

## II. Arguments Presented

Plaintiff Shapiro argues that Commerce violated its own regulations in deciding to rule on the scope of the LWS Order during the first administrative review without initiating either a scope or circumvention inquiry under 19 C.F.R. § 351.225. Pl's Memo at 8-18. Shapiro also argues that Commerce exceeded its authority by ordering CBP to retroactively suspend

liquidation of LWS entries and collect estimated antidumping duties on shipments entered prior to the initiation of the scope review. Pl's Memo at 19. Notably, Plaintiff admits Commerce has the power to decide scope issues, and does not contest Commerce's finding that the LWS made with non-PRC origin fabric was substantially transformed in the PRC.

> Plaintiff does not contest Commerce's authority to conduct a country of origin scope inquiry or anti-circumvention inquiry to determine whether LWS manufactured in China from non-Chinese fabric is subject to outstanding antidumping and countervailing duty orders. Plaintiff recognizes that Commerce is not bound by CBP's country of origin analysis in enforcing the antidumping and countervailing duty laws. Moreover, Plaintiff does not contest the legal or factual findings of Commerce's country of origin determination as contained in the May 25, 2010 preliminary memorandum and subsequently adopted into the final results of the First Administrative Review.

Pl's Memo at 9-10. Rather, Shapiro argues that Commerce's failure to follow its regulations resulted in denial of Plaintiff's fundamental due process rights. Pl's Memo at 18-19. Shapiro points out that in the vast majority of instances where scope is at issue, Commerce uses its formal scope procedures under 19 C.F.R. § 351.225. *See* Pl's Reply at 12, *citing Notice of Scope Rulings*, 76 Fed. Reg. 73,596 (Nov. 29, 2011) (showing 36 active scope and circumvention inquiries pending before Commerce at the end of the first quarter of 2011).

The government argues that Commerce's actions were proper because the agency has the right to determine whether to launch a formal scope inquiry or to investigate scope issues as part of an administrative review. Defendant's Memorandum in Opposition to Plaintiff's Rule 56.2 Motion for Judgment on the Agency Record ("Def's Memo") at 11. According to Defendant, "Commerce's authority to issue instructions is *inherent* in its authority to examine scope issues within the context of the review, and is *implicitly required* by the statute to effectuate the retrospective system for the assessment of antidumping and countervailing duties."

*Id*. at 8-9 (emphasis added).    Likewise, suspending liquidation during an administrative review "*is not expressly provided by statute . . .* but rather is *statutorily implied* and required for Commerce to calculate assessment rates for subject merchandise."[4]

Petitioner LWSC argues that Commerce has explicit authority to determine which of Aifudi's entered goods were merchandise subject to the LWS Order.  LWSC's Response to Shapiro's Rule 56.2 Memorandum In Support of its Motion for Judgment on the Agency Record ("LWSC's Resp.") at 14-15.  Commerce merely "clarified" the existing liquidation instructions when it ordered the retroactive suspension of liquidation of Plaintiff's non-PRC fabric LWS.  *Id*.

### III. Jurisdiction and Standard of Review

Plaintiff has properly invoked jurisdiction pursuant to 28 U.S.C. § 1581(c).  The court will uphold a determination by Commerce unless it is "unsupported by substantial evidence on the record or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(I); *NSK Ltd. v. United States*, 510 F.3d 1375, 1379 (Fed. Cir. 2007).  "In order to effectuate review of the reasonableness of agency action, '[c]ourts look for a reasoned analysis or explanation for an agency's decision as a way to determine whether a particular decision is arbitrary, capricious, or an abuse of discretion.'" *U.S. Steel Corp. v. United States*, 621 F.3d 1351, 1357 (Fed. Cir. 2010), quoting *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir. 1998).  An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represent an unreasonable

---

[4] Def's Memo at 22 (emphasis added).  Defendant failed to explain how suspension of liquidation aids in the calculation of antidumping rates for subject merchandise.

judgment in weighing relevant factors. *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005).

### *IV. Discussion*

Although argued extensively by the parties, it is clear that Commerce has the right to conduct a scope inquiry during an administrative review. Indeed, 19 C.F.R. § 351.225(f)(6) expressly permits Commerce to "conduct [a] scope inquiry in conjunction with [an administrative] review." The court is mindful that "Commerce retains broad discretion to define and clarify the scope of an antidumping investigation in a manner which reflects the intent of the petition." *Minebea Co. v. United States*, 16 CIT 20, 22, 782 F. Supp. 117, 120 (1992) (upholding as supported by substantial evidence scope clarification made after notice of initiation). This discretion is limited by the requirement that it be exercised reasonably and that any consequent determination be supported by substantial evidence in the administrative record. *See Minebea*, 16 CIT at 22, 782 F. Supp. at 119.

The government and LWSC cite decisions in support of Commerce's power to determine a product's origin within an administrative review, but the cases cited are inapposite because none address the critical circumstance here, *i.e.*, the retroactive suspension of liquidation.[5] The administrative proceedings in which Commerce reviewed scope within the context of an administrative review are few and none present the circumstances involved here.

---

[5] *See e.g.*, *Mukand Intl. v. United States*, 29 CIT 1526, 412 F. Supp. 2d 1312 (2005), *affirmed* 502 F.3d 1366 (Fed. Cir. 2007); *Ugine and Alz Belg. N.V. v. United States*, 31 CIT 1536, 517 F. Supp. 2d 1333 (2007), *affirmed* 551 F.3d 1339 (Fed. Cir. 2009) ; *Tapered Roller Bearings and Parts Thereof, Finished or Unfinished from the People's Republic of China*, 75 Fed. Reg. 844 (Jan. 6, 2010). In *Mukand*, plaintiff asserted Commerce illegally failed to initiate

(continued . . .)

The issue here is that Commerce ignored the corollary to 19 C.F.R. § 351.225(f)(6), *i.e.*, that it must abide by the restrictions imposed on its authority to perform certain actions during a scope inquiry regardless of the formality of the proceeding pursuant to which that is determined. In conducting the scope review within the first administrative review, Commerce paid lip service to the scope regulations but failed to follow their restriction of suspension of liquidation to only those entries made on or after the date of initiation of a formal scope inquiry.[6] "If liquidation [of a product subject to a scope inquiry] has not been suspended, the Secretary will instruct [CBP] to suspend liquidation and to require a cash deposit of estimated duties, at the applicable rate, for each unliquidated entry of the product entered . . . *on or after the date of initiation of the scope inquiry*." 19 C.F.R. § 351.225(*l*)(2) (emphasis added).

_____

(. . . continued)
a scope inquiry following Mukand's request, with the result that entries were liquidated when their suspensions were lifted. *Mukand*, 412 F. Supp. 2d at 1317. When Mukand later asked the court for an injunction, the court found it lacked jurisdiction because Mukand failed to protect its own entries from liquidation. *Mukand*, 412 F. Supp. 2d at 1319. The court never reached the issue of whether Commerce correctly interpreted its scope regulations. In the *Ugine* case, plaintiff challenged Commerce's instructions to CBP to liquidate entries of foreign-source product that Commerce had determined were outside the scope of the order. The court found *ultra vires* Commerce's instruction to CBP to liquidate entries with antidumping duties where it had earlier found those entries were not within the scope of the applicable order. *Ugine*, 517 F.Supp. 2d at 1346. Notably, in neither of those cases did Commerce suspend liquidation of entries retroactively.

[6]     Plaintiff objects to a number of Commerce actions in this case, and lists several regulations other than 19 C.F.R. § 351.225(*l*) which it believes were violated. Plaintiff's Reply Brief at 5-6. For example, for administrative convenience, Commerce established case numbers and cash deposit rates for goods from countries other than the PRC based upon the LWS Order. *Cf. Ugine*, 517 F.Supp. 2d at 1346 (Commerce instruction to liquidate entries of German product which were outside scope of antidumping order on Belgian product was *ultra vires*). But Plaintiff failed to prove actual harm suffered by it (or others) as a result of those actions. The court does not find Commerce's actions resulted from a reasonable application of the regulations.

Commerce clearly recognized that its administrative review regulations do not permit retroactive suspension of liquidation. AR2 I&D Memo at 4 ("[the administrative review regulations] do not specifically address the suspension of liquidation with respect to a product whose status is subject to a scope inquiry conducted in the context of an administrative review proceeding"). Commerce referred to the scope regulations for "relevant guidance" in its conduct of the scope investigation during the administrative review. *Id.* But Commerce then avoided § 351.225(*l*)(2)'s restriction on suspension of liquidation of entries by claiming that it could "order the suspension of liquidation of a product found to be included within the scope of an order to continue or to commence, as the case may be, following a preliminary scope determination."[7]

Even if Commerce decided not to initiate a formal scope proceeding, it was bound by the substantive regulations regarding suspension of liquidation during scope determinations. In bridging the gap between regulations governing administrative reviews (which do not provide for suspensions because those entries are automatically suspended pending the review) and scope reviews (where entries may be suspended prospectively from the initiation of the review), Commerce chose to be bound by neither rule. Commerce paid lip service to the formal scope regulations in the AR2 I&D Memo while ignoring 19 C.F.R. § 351.225(*l*)(2)'s requirement that

---

[7]  *Id.* Commerce stated that the regulations permit suspensions of liquidations "to continue or commence". AR2 I&D Memo at 4. Under Commerce's regulations, however, suspension of liquidation may "continue" only where it is already in place, 19 C.F.R. § 351.225(*l*)(1), and it may "commence" only on or after the date of initiation of a scope investigation. 19 C.F.R. § 351.225(*l*)(2). Commerce's citation 19 C.F.R. § 351.225(*l*) to support a retroactive order of suspension of liquidation in the absence of a formal scope inquiry is thus an erroneous interpretation of law.

entries cannot be suspended from liquidation before the initiation of a country of origin scope inquiry. Because Commerce failed to initiate a formal scope inquiry, there was no "date of initiation" from which it could require suspension of Shapiro's entries. 19 C.F.R. § 351.225(*l*).

Commerce suspected that Aifudi had made U.S. sales that were not part of the database submitted pursuant to the first administrative review questionnaire as early as January 14, 2010, when it issued a supplemental questionnaire to Aifudi on the issue.[8] It is clear from the facts in the record that Commerce and Petitioners LWSC wanted to prevent circumvention of the LWS Order by Aifudi's use of the CBP origin ruling to declare LWS made with non-PRC origin fabric to be non-originating from the PRC and thus avoid the antidumping duties. LWSC points out Commerce's clarification of liquidation instructions was necessary "to ensure that Shapiro would stop circumventing the Orders by making false country of origin declarations" on its LWS entries. LWSC Resp. at 12. Yet neither Commerce nor Petitioners used the tools available to them to combat the alleged circumvention of the LWS Order. *See* 19 U.S.C. § 1677j(a)-(d); 19 C.F.R. § 351.225(a)-(j); *see e.g.*, *Small Diameter Graphite Electrodes from the People's Republic of China: Initiation of Anti-Circumvention Inquiry*, 76 Fed. Reg. 14,910 (March 18, 2011).

The AR2 I&D Memo states that Commerce will initiate a formal scope inquiry "if the Secretary finds that an inquiry is warranted." AR2 I&D Memo at 2; 19 C.F.R. § 351.225(b). That same memo states that "it was apparent that *the Department needed to address a scope*

---

[8] Preliminary Decision at 2. If Commerce had initiated a formal scope inquiry within the ongoing administrative review at that time of this inquiry to Aifudi it could have legally instructed CBP to suspend liquidation of the affected entries as early as January, 2010.

*issue* to determine the country of origin of [LWS] produced in the PRC from imported woven fabric". AR2 I&D Memo at 4 (emphasis added). The court is at a loss to understand why Commerce could find a scope inquiry was unwarranted when it "needed to address" that very issue. Commerce's circular reasoning in defense of the retroactive liquidation instructions supports the finding that the Clarification instructions were issued based upon an erroneous interpretation of the law.

The government essentially argues that in determining the Aifudi LWS were within the original scope, Commerce was declaring what that original scope applied to, and therefore Commerce was correct to "clarify" the instructions retroactively. But these *post hoc* arguments could be applied in any scope inquiry, because by definition Commerce decides in those proceedings whether the product involved falls within the previously-defined scope. If Commerce's actions here were allowed to stand, Commerce could avoid the restriction on suspension of liquidation in any case by simply declaring an "informal" scope review and issuing retroactive suspension of liquidation instructions to CBP to "clarify" what the original scope definition covers. Commerce's regulations already contemplate the situation that Commerce was trying to address, and provide the protection to importers that entries of merchandise subject to scope inquiries will not be suspended before such inquiries are commenced. 19 C.F.R. § 351.225(*l*)(2).

The court agrees with Shapiro that Commerce violated its regulations by instructing CBP to retroactively suspend liquidation of entries of Aifudi's LWS. Commerce understood which regulations should apply under the circumstances but ignored the scope regulation controlling which entries could be suspended. At the time of the Clarification,

liquidation of the earlier entries at bar had not been suspended as a matter of fact or law. By ordering the suspension of liquidation retroactive to the beginning of the period of review, Commerce exceeded its authority under 19 C.F.R. § 351.225(*l*). Commerce's determination that it had appropriate authority to issue retroactive suspension of liquidation instructions was based upon flawed reasoning and ignored applicable regulatory restrictions on suspensions. That determination was thus *ultra vires* and based upon an erroneous interpretation of the law.

### *V. Conclusion*

Based on the foregoing, the court finds *ultra vires* Commerce's action to suspend liquidation of Shapiro entries of LWS with countries of origin other than the PRC made during the period of review. The court hereby remands the action to Commerce with instructions to issue instructions to CBP to lift the suspension of liquidation of the entries listed on the parties' October 12, 2012 submission and to liquidate those entries as entered without regard to antidumping or countervailing duties that may otherwise have been assessed. Any cash deposits that have been paid by Plaintiff as a consequence shall be refunded with interest.

Judgment will enter accordingly.

/s/  R. Kenton Musgrave
R.  Kenton Musgrave, Senior Judge

Dated: December 18, 2012
          New York, New York