# United States Court of Appeals
# for the Federal Circuit

---

**AMS ASSOCIATES, INC.,**
**(doing business as Shapiro Packaging)**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee,*

AND

**LAMINATED WOVEN SACKS COMMITTEE,**
**COATING EXCELLENCE INTERNATIONAL, LLC,**
AND **POLYTEX FIBERS CORPORATION,**
*Defendants-Appellees.*

---

2012-1688

---

Appeal from the United States Court of International Trade in No. 11-CV-0101, Senior Judge R. Kenton Musgrave.

---

Decided: June 24, 2013

---

RONALD M. WISLA, Kutak Rock LLP, of Washington, DC, argued for plaintiff-appellant. With him on the brief was LIZBETH R. LEVINSON.

TARA K. HOGAN, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee United States. With her on the brief were STUART F. DELERY, Principal Deputy Assistant Attorney General, JEANNE E. DAVIDSON, Director, and REGINALD T. BLADES, JR., Assistant Director. Of counsel on the brief was REBECCA CANTU, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of Washington, DC.

JEFFERY B. DENNING, King & Spalding, LLP, of Washington, DC, argued for the defendants-appellees Laminated Woven Sacks Committee, et al. With him on the brief was JOSEPH W. DORN. Of counsel was JEFFREY MARK TELEP.

---

Before LOURIE, O'MALLEY, and TARANTO, *Circuit Judges*.

TARANTO, *Circuit Judge*.

Acting under 19 U.S.C. § 1673 *et seq.*, the United States Department of Commerce found that certain Chinese merchandise was being sold in the United States at less than fair value, and it therefore issued an order imposing an antidumping duty on entries of such merchandise into the United States. The order applied to Zibo Aifudi Plastic Packaging Co., Ltd., a firm making covered merchandise in the People's Republic of China (PRC). As to the amount of the duty, because Aifudi had shown that it was not subject to control by the government of the PRC, Commerce assigned Aifudi a company-specific rate, not the country-wide rate that otherwise applied, as a default, to such merchandise from the PRC.

Later, at Aifudi's request, Commerce initiated a review, under 19 U.S.C. § 1675, of the amount of the anti-

dumping duty for a defined period. In that proceeding, Commerce considered Aifudi's eligibility for a company-specific rate for that period. After Commerce published its preliminary results, which were favorable to Aifudi, Aifudi immediately withdrew from the proceeding and removed its confidential information from the record. Commerce then concluded that, because Aifudi had stopped cooperating and removed much record information, the record no longer contained enough verifiable information to prove that Aifudi was not subject to government control. Commerce therefore assigned Aifudi the default PRC-wide rate for the review period.

AMS Associates Inc., an American affiliate of Aifudi's that does business as Shapiro Packaging, appealed Commerce's order to the Court of International Trade, which sustained the application of the PRC-wide rate to Aifudi. Because we conclude that Commerce's decision to apply the PRC-wide rate to Aifudi is supported by substantial evidence and does not violate any law, we affirm.

## BACKGROUND

Shapiro Packaging imports into the United States laminated woven sacks manufactured and exported by Aifudi. Laminated woven sacks are sacks made of plastic strips that are woven together and then laminated so that graphics or letters can be printed on the resulting surface. In August 2008, Commerce found that laminated woven sacks exported from the PRC were being sold in the United States at less than fair market value and issued an antidumping-duty order. *Laminated Woven Sacks from the People's Republic of China*, 73 Fed. Reg. 45,941 (Dep't of Commerce Aug. 7, 2008) (notice); *see* 19 U.S.C. § 1673. Aifudi participated in the proceeding, submitted information and verified it at Commerce's request, demonstrated that it was not subject to government control, and therefore was assigned a "separate rate" of 64.28 percent, not the default PRC-wide rate. *Id.* at

45,942; *Laminated Woven Sacks from the People's Republic of China*, 73 Fed. Reg. 35,647-48 (Dep't of Commerce June 24, 2008) (final determination).

On September 22, 2009, in response to requests from Aifudi and another company, Commerce initiated an administrative review of the order for the period January 31, 2008, through July 31, 2009. *Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for Revocation in Part*, 74 Fed. Reg. 48,224 (Sept. 22, 2009); *see* 19 U.S.C. § 1675. Naming Aifudi a "mandatory respondent," Commerce sent Aifudi a questionnaire, one section of which, Section A, concerned the respondent company's eligibility for a separate rate. Aifudi submitted public and confidential versions of its Section A responses on October 26, 2009. After realizing that it had omitted the Chinese and English translations of its Business License Application Process and a complete set of its 2006 and 2007 Capital Verification Reports from its initial Section A response, Aifudi submitted public and confidential versions of those documents on November 6, 2009. Commerce then issued a First Supplemental Questionnaire, in part directed to Aifudi's separate-rate eligibility, to which Aifudi submitted public and confidential responses on January 14, 2010. Later in 2010, Aifudi again supplemented its responses to Section A.

On September 13, 2010, Commerce issued its preliminary results. *Laminated Woven Sacks from the People's Republic of China*, 75 Fed. Reg. 55,568 (Dep't of Commerce Sept. 13, 2010) (prelim. admin. review). It preliminarily found that Aifudi's evidence—which Commerce had not yet verified (as Shapiro Packaging confirmed at oral argument in this court)—demonstrated an absence of control by the PRC's government and entitled Aifudi to a separate rate of only ".68 percent" [*sic*]. *Id.* at 55,571, 55,573. Seven days later, Aifudi withdrew from the proceeding. In its withdrawal letter, Aifudi asked Commerce to remove from the record, and to destroy, all

documents containing its confidential information. Commerce did so. On September 20, 2010, the same day that Aifudi withdrew, Shapiro Packaging entered the proceeding.

Commerce issued the final results of the administrative review on March 18, 2011. *Laminated Woven Sacks from the People's Republic of China*, 76 Fed. Reg. 14,906 (Dep't of Commerce Mar. 18, 2010) (final admin. review). Commerce found that Aifudi was no longer eligible for a separate rate, "as it ha[d] significantly impeded the Department's ability to conduct [the] proceeding and, by withdrawing from the review, prevented the verification of the information it had earlier provided." *Id.* at 14,908. Under 19 U.S.C. § 1677e(a), that finding authorized Commerce, in making its determinations, to rely on "the facts otherwise available," *i.e.*, the facts available notwithstanding the acts that impeded the proceeding and prevented verification. Commerce concluded that Aifudi's withdrawal from participation and removal of its confidential information meant that Commerce did "not have any record evidence upon which to determine whether Zibo Aifudi [was] eligible for a separate rate for this review period," so Aifudi would be subjected to the country-wide rate. 76 Fed. Reg. at 14,909.

Commerce then invoked another statutory provision to set the country-wide rate. It found that Aifudi (and therefore the country-wide entity of which it was a part) had "failed to cooperate by not acting to the best of its ability to comply with requests for information." 76 Fed. Reg. at 14,909. Under 19 U.S.C. § 1677e(b), that finding authorized Commerce to "use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available." Doing so, Commerce adopted a PRC-wide rate of 91.73 percent. 76 Fed. Reg. at 14,909.

On appeal to the Court of International Trade, Shapiro Packaging argued, among other things, that

Commerce had erred in applying the PRC-wide rate of 91.73 percent to Aifudi and requested a remand to Commerce for a "redetermination." *AMS Assocs. v. United States*, No. 11-00101, 2012 WL 3065277 (July 27, 2012). The Trade Court, stating that Shapiro Packaging had not "convinced the court that there remain[ed] sufficient information in the record to permit Commerce to determine a separate rate for Aifudi, now that Aifudi's confidential information ha[d] been removed," sustained Commerce's application of the country-wide rate to Aifudi. *Id* at *8. Shapiro Packaging appeals. This court has jurisdiction under 28 U.S.C. § 1295(a)(5).

## DISCUSSION

The only issue on appeal is whether Commerce properly found that Aifudi did not carry its burden to establish its entitlement to a separate rate. We must uphold that determination unless it is unsupported by substantial evidence on the record or otherwise not in accordance with law. 19 U.S.C. § 1516a(a)(2)(B)(iii), (b)(1)(B); *see Micron Tech., Inc. v. United States*, 117 F.3d 1386, 1393 (Fed. Cir. 1997). We find neither defect in Commerce's determination.

Commerce presumes that all exporters from the PRC (a designated "nonmarket economy") are subject to government control and therefore should be subjected to a single country-wide rate for the duties imposed by an antidumping-duty order. *See Sigma Corp. v. United States*, 117 F.3d 1401, 1405 (Fed. Cir. 1997). But Commerce allows the presumption to be overcome. An exporter can affirmatively demonstrate its entitlement to a separate rate by showing the absence of both de jure and de facto government control over its export activities. *Id.* The absence of de jure government control can be shown by reference to legislation and other governmental measures that suggest sufficient company legal freedom. *Id.* The absence of de facto government control can be

shown by evidence that the exporter sets its prices independently of the government and of other exporters, negotiates its own contracts, keeps the proceeds of its sales (taxation aside), and selects its management autonomously. *Id.*; *Advanced Tech. & Materials Co. v. United States*, 885 F. Supp. 2d 1343, 1347 (Ct. Int'l Trade 2012).

Accordingly, in this case, Commerce could apply a country-wide rate to Aifudi unless the record evidence affirmatively proved the absence of both de jure and de facto control of Aifudi by the PRC's government. In its Final Determination, Commerce found that Aifudi's withdrawal from the investigation and the Aifudi-requested removal of its confidential information "significantly impeded the Department's ability to conduct this proceeding" and left Commerce unable to verify information that Aifudi had earlier provided in order to establish its eligibility for a separate rate. As a result, Commerce concluded, it was unable to make a party-specific determination of lack of government control of Aifudi, a matter on which Aifudi had the burden of persuasion, so that the default country-wide rate applied. 76 Fed. Reg. at 14,908-09.

That is how we understand Commerce's statement that it did "not have any record evidence upon which to determine whether Zibo Aifudi is eligible for a separate rate," *id.* at 14,909, which it immediately followed by the summary, "as Zibo Aifudi has not demonstrated its entitlement to a separate rate," *id.* This understanding is the most natural interpretation of Commerce's explanation, especially when read with the relevant background legal principles in mind. *See Hontex Enters., Inc. v. United States*, 248 F. Supp. 2d 1323, 1326 n.3 (Ct. Int'l Trade 2003) ("Because [respondent] refused verification of its submitted information, Commerce was unable to ascertain whether [respondent] had rebutted the presumption of state control that attaches in [nonmarket economy] investigations such that it was entitled to a separate

company-specific antidumping duty margin."). Our understanding reflects our conclusion that "the agency's path may reasonably be discerned." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983).

In disregarding information that it could not verify, Commerce did not act contrary to law. AMS cites no authority that requires Commerce to rely on information that it cannot verify. Specifically, it cites no statutory provision that forbids Commerce to disregard unverifiable information in making its decisions. And several statutory provisions reinforce, rather than undermine, the agency's authority to disregard unverifiable information, although affirmative statutory authorization hardly seems necessary. Thus, 19 U.S.C. § 1677e(a)(2)(D) specifies that, when submitted "information cannot be verified," Commerce should use "the facts *otherwise* available." (Emphasis added.) And another provision, 19 U.S.C. § 1677m(e)(2), which addresses what information Commerce must consider even when information "does not meet all the applicable requirements," expressly makes a precondition of any such obligation that "the information can be verified." *Cf. id.* § 1677m(i) (expressly requiring verification in certain circumstances).

There also was substantial evidence to support the conclusion that the public information left in the record after Aifudi withdrew did not include verifiable evidence that would be necessary to establish Aifudi's eligibility for a separate rate. Specifically, although the Commerce ruling does not provide details, Commerce and the intervenor supporting it here explain that the record lacks complete and verifiable information about, *e.g.*, (1) how Aifudi established its United States prices, (2) the payment process for its United States sales, (3) the identity of Aifudi's employees conducting price negotiations, and (4) ultimate ownership of the company. Appellee United States' Br. at 15-17; Appellees Laminated Woven Sacks

Committee et al. Br. at 19-21. Shapiro Packaging does not demonstrate otherwise. Without verifiable information on those matters, Aifudi was necessarily unable to carry its burden of affirmatively showing a lack of de jure and de facto control by the PRC's government.

In these circumstances, there is no evidentiary or legal error in Commerce's decision "to disregard the public information" that Aifudi had submitted, *i.e.*, to disregard all of the public information Aifudi had submitted, which remained in the record (as the United States describes what Commerce did, Appellee United States' Br. at 15). Even if an across-the-board disregard—even of verifiable, untainted information—might be questioned in other circumstances, here the absence of verifiable information that would be necessary for Aifudi to carry its burden made any other Aifudi-submitted information immaterial to the point in dispute. At least in these circumstances, Commerce committed no legal error in disregarding all of Aifudi's remaining information. *Cf. Qingdao Taifa Grp. Co. v. United States*, 637 F. Supp. 2d 1231, 1239-40 (Ct. Int'l Trade 2009) ("Because Taifa attempted to withhold or alter sales and production documents that Commerce requested, Commerce properly concluded that the information that Taifa provided was 'incomplete and unreliable' and that no information on the record could be used to calculate an accurate dumping margin for Taifa. Commerce therefore could disregard all of the information Taifa provided . . . .") (internal citation omitted); *Shandong Huarong Mach. Co. v. United States*, 435 F. Supp. 2d 1261, 1295 (Ct. Int'l Trade 2006) (upholding application of the country-wide rate where the information on the record necessary to calculate a separate rate was incomplete and unverifiable); *Shanghai Taoen Int'l Trading Co. v. United States*, 360 F. Supp. 2d 1339, 1348 n.13 (Ct. Int'l Trade 2005) (upholding non-reliance on entire submission where missing information went to the core of the rate determination).

CONCLUSION

Because Commerce could properly apply the default country-wide rate after concluding that, with critical information missing or unverifiable, Aifudi could not carry its burden to justify a separate rate, we affirm.

**AFFIRMED**