# United States Court of Appeals for the Federal Circuit

---

**AMS ASSOCIATES, INC.**
**(doing business as Shapiro Packaging),**
*Plaintiff-Appellee,*

**v.**

**UNITED STATES,**
*Defendant,*

AND

**LAMINATED WOVEN SACKS COMMITTEE,**
**COATING EXCELLENCE INTERNATIONAL, LLC,**
AND **POLYTEX FIBERS CORPORATION,**
*Defendants-Appellants.*

---

2013-1208

---

Appeal from the United States Court of International Trade in No. 11-CV-0148, Senior Judge R. Kenton Musgrave.

---

Decided: December 13, 2013

---

RONALD M. WISLA, Kutak Rock LLP, of Washington, DC, argued for plaintiff-appellee. With him on the brief was LIZBETH R. LEVINSON.

JEFFERY B. DENNING, King & Spalding, LLP, Washington, DC, argued for defendants-appellants. With him on the brief was JOSEPH E. DORN.

————————————

Before LOURIE, DYK, and O'MALLEY, *Circuit Judges.*

LOURIE, *Circuit Judge.*

Laminated Woven Sacks Committee *et al.* ("LWSC") appeal from the decision of the United States Court of International Trade (the "trade court") reversing the final results of a second administrative review of an antidumping duty order for Chinese laminated woven sacks by the United States Department of Commerce ("Commerce") that retroactively suspended liquidation instructions implementing a country of origin determination. *See AMS Assocs., Inc. v. United States*, 881 F. Supp. 2d 1374 (Ct. Int'l Trade 2012). Because we agree with the trade court that Commerce did not abide by its own regulations, we affirm.

## BACKGROUND

Laminated woven sacks are sacks made of plastic strips that are woven together and then laminated so that graphics or letters can be printed on the resulting surface. In August 2008, Commerce found that laminated woven sacks exported from the People's Republic of China were being sold in the United States at less than fair market value and issued an antidumping duty order pursuant to 19 U.S.C. § 1673. *Laminated Woven Sacks from the People's Republic of China*, 73 Fed. Reg. 45,941 (Dep't of Commerce Aug. 7, 2008). The scope of the order was defined in part as "bags or sacks consisting of one or more plies of fabric consisting of woven polypropylene strip and/or polyethylene" that are "laminated to an exterior ply of plastic film or to an exterior ply of paper that is suitable for high quality print graphics." *Id.* at 45,942.

In September 2009, Commerce initiated a series of administrative reviews of that order for the periods January 31, 2008 through July 31, 2009 (first administrative review) and August 1, 2009 through July 31, 2010 (second administrative review) pursuant to 19 U.S.C. § 1675. During those periods, AMS Associates, Inc., doing business as Shapiro Packaging ("Shapiro"), imported laminated woven sacks into the United States that were manufactured and exported by its Chinese affiliate Zibo Aifudi Plastic Packaging Co., Ltd. ("Aifudi"). There were two types of sacks: (1) those made from fabric sourced in China, and thus undisputedly subject to the antidumping duty order; and (2) those made from fabric that had been imported into China from other countries.

During the first administrative review, petitioners LWSC were concerned that not all of Aifudi's production of laminated woven sacks was being included in the information provided to Commerce and requested that Commerce investigate how respondent Aifudi determined whether or not its merchandise was subject to the antidumping duty order. *AMS Associates, Inc. v. United States*, No. 10-0101, 2012 WL 3065277, at *1 (Ct. Int'l Trade July 27, 2012). Commerce thus investigated the origin of the Aifudi sacks made with non-Chinese fabric within the ongoing first administrative review, but despite requests by Aifudi, Commerce chose not to initiate a formal scope inquiry pursuant to 19 C.F.R. § 351.225. *Id.*

Aifudi argued to Commerce that a ruling it obtained from the United States Customs and Border Protection Service ("Customs") provided that the sacks produced from non-Chinese fabric were deemed to be from the country of origin of the fabric itself (*viz.*, India, Pakistan, and Vietnam, *inter alia*) and thus not subject to the antidumping duty order. *Id.*; *AMS Assocs.*, 881 F. Supp. 2d at 1376. Following that ruling, Aifudi declared a non-Chinese origin for sacks made with non-Chinese fabric,

and those entries were consequently not subject to anti-dumping deposits. *Id.*

However, in a May 25, 2010 memorandum, Commerce issued a preliminary country of origin determination concluding that China was indeed the country of origin of the Aifudi sacks made with non-Chinese fabric under a substantial transformation analysis and that they were therefore within the scope of the antidumping duty order. *Preliminary Decision Regarding the Country of Origin of Laminated Woven Sacks Exported by [Aifudi]* (Dep't of Commerce May 25, 2010) ("*Preliminary Decision*"); J.A. 10283–91. Based on its finding in that *Preliminary Decision*, Commerce then issued a self-styled "clarification" of its liquidation instructions to Customs. Message No. 0204301 (Dep't of Commerce July 23, 2010) ("*Clarification*"); J.A. 10293–95. In the *Clarification*, Commerce instructed Customs to "suspend liquidation of all [laminated woven sacks] from [China], regardless of the origin of the woven fabric, that is entered, or withdrawn from warehouse, for consumption, on or after January 31, 2008." *Clarification* at 2.

Commerce issued the final results of the first administrative review in March 2011, which prompted a dispute over the rate that Commerce applied to the amount of the duty levied on Aifudi for that period. Acting for Aifudi, Shapiro sued in the trade court, which sustained Commerce's application of a country-wide rate to Aifudi, and we affirmed on appeal. *AMS Assocs.*, 2012 WL 3065277, at *4, *aff'd*, 719 F.3d 1376, 1381 (Fed. Cir. 2013). Shapiro argued at the trade court that the effect of the *Clarification* had been to retroactively suspend liquidation of and collect cash deposits on all entries of Aifudi sacks made since January 31, 2008. However, by the time that the *Clarification* instructions were transmitted to Customs, all affected entries within the period of the first administrative review had already been liquidated in due course. *AMS Assocs.*, 2012 WL 3065277, at *1.

Aifudi subsequently withdrew from participation in the second administrative review and Commerce thus applied an adverse facts available ("AFA") rate to Aifudi in the preliminary results. *Laminated Woven Sacks from the People's Republic of China: Preliminary Results of the Second Administrative Review*, 75 Fed. Reg. 81,218 (Dep't of Commerce Dec. 17, 2010); J.A. 10200–03. Shapiro contested both the application of the retroactive suspension of liquidation and the assessment of antidumping duties on sacks exported from China that had been manufactured from non-Chinese fabric and entered into the United States during the period of the second administrative review. J.A. 20001–16. Shapiro argued that Commerce's determination to apply such duties to merchandise entered during that period related directly to its country of origin determination and issuance of suspension of liquidation instructions during the first administrative review. *Id.* at 20009–10.

In the final results of the second administrative review, Commerce affirmed its decision to apply AFA to Aifudi. *Laminated Woven Sacks from the People's Republic of China: Final Results of the Second Antidumping Duty Administrative Review*, 76 Fed. Reg. 21,333 (Dep't of Commerce Apr. 15, 2011); J.A. 10250–52. With respect to whether entries of sacks from China produced from non-Chinese fabric were covered by the antidumping duty order, Commerce stated: "[w]e continue to follow the decision made by the Department in the first administrative review and find that the correct procedures were followed when determining the country of origin . . . ." *Laminated Woven Sacks from the People's Republic of China: Issues and Decision Memorandum for the Final Results of the Second Administrative Review* at 2 (Dep't of Commerce Apr. 8, 2011); J.A. 10244–49.

Shapiro then filed the instant action challenging the final results of the second administrative review in the trade court. Shapiro did not take issue with Commerce's

application of the AFA rate, Commerce's authority to conduct a country of origin scope inquiry, or the factual findings of Commerce's country of origin decision. Shapiro only challenged Commerce's authority to issue retroactive suspension of liquidation instructions that brought merchandise that had previously entered not subject to the antidumping duty order within the scope of that order in violation of the procedures specifically set forth in Commerce's scope regulations.

The trade court agreed with Shapiro and held that Commerce violated its own regulations by instructing Customs to retroactively suspend liquidation of entries of the sacks made with non-Chinese fabric. *AMS Assocs.*, 881 F. Supp. 2d at 1382. The court found that it was clear from the facts in the record that Commerce and LWSC wanted to prevent Shapiro and Aifudi's alleged circumvention of the antidumping duty order by declaring that sacks made from non-Chinese fabric were of Chinese origin, but that they had not followed the correct procedures to do so. *Id.* The court therefore held that Commerce had exceeded its authority under 19 C.F.R. § 351.225(l) and remanded the case to Commerce for further proceedings and with instructions to lift the liquidation suspension. *Id.*

LWSC timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## DISCUSSION

We review decisions of the trade court without deference, applying the same substantial evidence standard of review that the trade court itself applies in reviewing Commerce's determinations. *Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1300 (Fed. Cir. 2013); *Global Commodity Grp. LLC v. United States*, 709 F.3d 1134, 1138 (Fed. Cir. 2013); *Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1559 n.10 (Fed. Cir. 1984).

LWSC argues that Commerce's *Clarification* did not enlarge the scope of the antidumping duty order but merely enforced that order against Shapiro, which LWSC asserts was unlawfully attempting to avoid paying duties by falsely declaring that Aifudi's goods were not of Chinese origin.  LWSC contends that Commerce's suspension of liquidation in the initial investigation was proper because all subject entries fell within the scope of Commerce's original antidumping duty order.  LWSC further asserts that Commerce is entitled to deference in interpreting its own regulations and has inherent authority to clarify its orders.  Shapiro responds that Commerce violated its own regulations because Commerce can only instruct Customs to suspend liquidation prospectively in certain investigations and proceedings to bring products within the scope of an existing antidumping duty order, and that Commerce's actions in this case were retroactive.  Commerce has neither appealed the trade court's decision itself nor joined in LWSC's appeal.

As an initial matter, we note our general agreement with LWSC that Commerce is entitled to deference in interpreting its own regulations and has authority to clarify its scope orders.  *See generally Am. Signature, Inc. v. United States*, 598 F.3d 816, 827 (Fed. Cir. 2010) ("In general, [Commerce's] construction of its own regulations is of controlling weight unless it is plainly erroneous or inconsistent with the regulation.") (internal quotations omitted); *Novosteel SA v. United States,* 284 F.3d 1261, 1269 (Fed. Cir. 2002) ("The 'Commerce Department enjoys substantial freedom to interpret and clarify its antidumping orders.  But while it may interpret those orders, it may not change them.'") (quoting *Ericsson GE Mobile Commc'ns, Inc. v. United States,* 60 F.3d 778, 782 (Fed. Cir. 1995)); *accord Crawfish Processors Alliance v. United States*, 483 F.3d 1358, 1361 (Fed. Cir. 2007).

However, an agency's interpretation of its regulations is neither entitled to deference nor given controlling

weight if it is "plainly erroneous or inconsistent with the regulation" itself. *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945). Moreover, "[i]t is a familiar rule of administrative law that an agency must abide by its own regulations." *Fort Stewart Schools v. Fed. Labor Relations Auth.*, 495 U.S. 641, 654 (1990) (citing *Vitarelli v. Seaton*, 359 U.S. 535, 547 (1959); *Service v. Dulles*, 354 U.S. 363, 388 (1957)). We have specifically applied that principle to Commerce. *See Torrington Co. v. United States*, 82 F.3d 1039, 1049 (Fed. Cir. 1996) ("Commerce, like other agencies, must follow its own regulations.").

This is a case about what procedures Commerce must follow when the scope of an existing antidumping duty order is unclear and Commerce seeks to further clarify that scope. Commerce has the express authority to conduct a scope inquiry and to clarify the scope of an unclear order during an administrative review pursuant to 19 C.F.R. § 351.225(f)(6). However, as the trade court correctly noted, the appeal before us questions whether Commerce failed to abide by the restrictions imposed on that authority to suspend liquidation to only those entries made on or after the date of initiation of a formal scope inquiry. We conclude that it did. We agree with Shapiro and the trade court that Commerce exceeded its authority under 19 C.F.R. § 351.225(l)(2) by ordering the suspension of liquidation retroactive to the beginning of the period of review with respect to an antidumping duty order that did not clearly cover laminated woven sacks manufactured in China from imported fabrics.

In order to prevent circumvention, 19 U.S.C. §§ 1677j(a)–(d) authorize Commerce to expand the scope of existing antidumping and countervailing duty orders to reach products that are not covered by the existing scope and to suspend liquidation through formal anti-circumvention inquiries. When concerns about scope arise after Commerce issues an antidumping or countervailing duty order, those concerns are to be resolved

through the procedures set forth in Commerce's own regulations. *See* 19 C.F.R. § 351.225(a). Specifically, Commerce may conduct formal circumvention inquiries pursuant to 19 C.F.R. §§ 351.225(g)–(j) and may conduct formal scope inquiries pursuant to 19 C.F.R. § 351.225(k), which may include country of origin determinations.

However, during the course of such anti-circumvention or scope inquiries, if Commerce determines that a product that is not subject to the existing order should be included within the scope of that order, then the scope regulations specifically authorizing Commerce to instruct Customs to suspend liquidation and to require cash deposits of estimated duties for such merchandise have limits. 19 C.F.R. § 351.225(l)(2). Commerce's own provision states:

> If the Secretary issues a preliminary scope ruling under paragraph (f)(3) of this section to the effect that the product in question is included within the scope of the order, any suspension of liquidation described in paragraph (l)(1) of this section will continue. *If liquidation has not been suspended, the Secretary will instruct the Customs Service to suspend liquidation and to require a cash deposit of estimated duties*, at the applicable rate, for each unliquidated entry of the product entered, or withdrawn from warehouse, for consumption *on or after the date of initiation of the scope inquiry.*

*Id.* (emphasis added).

Accordingly, when Commerce "clarifies" the scope of an existing antidumping duty order that has an unclear scope, the suspension of liquidation and imposition of antidumping cash deposits may not be *retroactive* but can only take effect "on or after the date of the initiation of the scope inquiry." *Id.* The unambiguous plain language of the regulation only authorizes Commerce to act on a *prospective* basis, and such express prospective authoriza-

tion reasonably is interpreted to preclude retroactive authorization; *expressio unius est exclusio alterius.  See also* 19 U.S.C. § 1673b(d)(2) (using the same "on or after" language).

However, Commerce does not have to initiate a formal scope proceeding under 19 C.F.R. § 351.225 when it wishes to issue a ruling that does not clarify the scope of an unambiguous original order.  Commerce must only follow the procedures outlined in § 351.225 when it wishes to clarify an order that is unclear.  To hold otherwise would permit importers to potentially avoid paying anti-dumping duties on past imports by asserting unmeritori-ous claims that their products fall outside the scope of the original order.  Importers cannot circumvent antidumping orders by contending that their products are outside the scope of existing orders when such orders are clear as to their scope.  Our precedent evinces this understanding. We have not required Commerce to initiate a formal scope inquiry when the meaning and scope of an existing anti-dumping order is clear. *Huaiyin Foreign Trade Corp. (30) v. United States*, 322 F.3d 1369, 1378–79 (Fed. Cir. 2003) (recognizing that although Commerce "cannot interpret an antidumping order so as to change the scope of that order, nor can Commerce interpret an order in a manner contrary to its terms," Commerce can issue clarifying instructions during an administrative review (internal citations omitted)).

Commerce erred in failing to conduct a formal scope inquiry in this case because the scope of the original antidumping order was unclear.  Both Commerce's *Preliminary Decision* as well as the Customs ruling confirm this lack of clarity.

Here, if Commerce and LWSC wanted to prevent Shapiro and Aifudi's alleged circumvention of the anti-dumping duty order, then they could have utilized and abided by the statutory and regulatory provisions that

authorize Commerce to investigate such allegations. But Commerce did not engage in a scope inquiry pursuant to its own procedures and formalities detailed in 19 C.F.R. § 351.225. Following the *Preliminary Decision* issued on May 25, 2010, in which Commerce concluded that sacks made with non-Chinese fabric were within the scope of the antidumping duty order under a substantial transformation analysis, Commerce issued its July 23, 2010 *Clarification* that instructed Customs to suspend liquidation of all sacks retroactive to January 31, 2008. Those instructions were clearly inconsistent with the limited prospective authority provided by § 351.225(l)(2).

## CONCLUSION

For the foregoing reasons, we conclude that the trade court did not err in holding that Commerce exceeded its authority under 19 C.F.R. § 351.225(l) and remanding the case to Commerce for further proceedings with instructions to lift the liquidation suspension. Accordingly, the judgment of the trade court is affirmed.

**AFFIRMED**